DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Martin E. Yelling has appealed from a judgment of the Summit County Court of Common Pleas that found him guilty of one count of having weapons while under disability, in violation of R.C. 2923.13(B). This Court affirms.
 I {¶ 2} On December 18, 2003, the Appellant was indicted on one count of having weapons while under disability in violation of R.C. 2923.13(B), a felony of the third degree;[1] one count of driving under suspension in violation of R.C. 4507.02, a misdemeanor of the first degree; and one count of possession of marijuana in violation of R.C. 2925.11, a misdemeanor of the fourth degree.
 {¶ 3} Following a jury trial on March 1, 2004, Appellant was found guilty as charged in the indictment. On March 9, 2004, the trial court sentenced Appellant to a definite term of two years for his having weapons while under disability conviction, to a ninety-day sentence for his driving under suspension conviction, and to a thirty-day sentence for his possession of marijuana conviction, with all sentences to be served concurrently.
 {¶ 4} Appellant has timely appealed his conviction of having weapons while under disability, asserting one assignment of error.[2]
 II Assignment of Error Number One
"Appellant's conviction was based upon insufficient evidence as a matter of law."
 {¶ 5} In his sole assignment of error, Appellant has challenged the sufficiency of the evidence upon which the jury found him guilty of having weapons while under disability. Specifically, Appellant has argued that there was insufficient evidence presented during the trial that he "acquired, carried, used, or brandished the [firearm] found in his residence." We disagree.
 {¶ 6} When reviewing the legal sufficiency of the evidence to support a conviction, it is the function of this Court:
"[T]o examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 7} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. (Citations omitted). A reversal of a verdict based on the insufficiency of the evidence means that no rational trier of fact could have found the defendant guilty. Id. at 387.
 {¶ 8} It is undisputed that pursuant to R.C. 2923.13
Appellant was under disability and that the handgun found in 91 Gale Street is a firearm. Pursuant to R.C. 2923.13(A):
"Unless relieved from disability as provided in [R.C. 2923.14], no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance * * *" R.C. 2923.13(A).
 {¶ 9} Pursuant to R.C. 2923.13(B): "No person who has been convicted of a felony of the first or second degree shall violate division [R.C. 2923.13(A)] within five years of the date of the person's release from imprisonment or from post-release control that is imposed for the commission of a felony of the first or second degree." R.C. 2923.13(B).
 {¶ 10} In the instant matter, Appellant has challenged the evidence supporting the finding that he "had" a firearm.
 {¶ 11} "In order for an individual to `have' a firearm within the meaning of R.C. 2923.13, he must actually or constructively possess it." State v. Najeway, 9th Dist. No. 21264, 2003-Ohio-3154, at ¶ 10, citing State v. Martinsons (June 17, 1998), 9th Dist. Nos. 2708-M 2713-M, at 6. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Messer (1995),107 Ohio App.3d 51, 56, appeal not allowed (1996),75 Ohio St.3d 1422. (Citation omitted). `"[M]ere access to the weapon can establish guilt, that is, ownership is not a prerequisite to determining whether someone `had' the weapon."' Najeway at ¶ 10, quoting State v. Robinson (Oct. 25, 2000), 9th Dist. No. 19905, at 9. "Moreover, circumstantial evidence can be used to support a finding of constructive possession." Najeway, at ¶ 10, citing State v. Grundy (Dec. 9, 1998), 9th Dist. No. 19016, at 22.
 {¶ 12} In the case sub judice and relevant to the instant appeal, Detective Gilbride ("Det. Gilbride") of the Akron Police Department ("APD"), Street Narcotics Uniform Detail ("S.N.U.D."), testified for the State. Det. Gilbride testified that on December 10, 2003, as part of a two month investigation, he was conducting undercover surveillance of the apartment located at 91 Gale Street, Akron, Ohio. He testified that he observed Appellant leave 91 Gale Street alone, enter his vehicle and begin driving. Det. Gilbride testified that Appellant was then arrested on an active warrant.
 {¶ 13} Det. Gilbride testified that within forty-five minutes to an hour of Appellant's arrest he secured a search warrant for 91 Gale Street. He testified that a forty-five caliber handgun, a zip-loc bag of marijuana and mail consisting of an electric bill addressed to Appellant at 91 Gale Street and a lease agreement in Appellant's name for 91 Gale Street were collected from the residence.
 {¶ 14} On cross-examination Det. Gilbride testified that Appellant did not have the handgun on his person and that "[the handgun] was recovered in his residence." Det. Gilbride admitted he could not tell defense counsel if 91 Gale Street was Appellant's residence, but he did state that Appellant had been observed there on prior occasions. Based on defense counsel's questions, Det. Gilbride also testified that he never saw Appellant carry or use the handgun. When asked about the addresses listed on the indictment, Appellant's driver's license, and the arrest intake form, Det. Gilbride answered "573 Moreley." But Det. Gilbride explained that "573 Moreley" is the residence of Appellant's brother. He also testified that the Department of Motor Vehicles records on Appellant were from four or five years ago. Det. Gilbride suggested that since Appellant provided the information for his arrest intake form his truthfulness should be questioned. Det. Gilbride testified that his department never saw Appellant at 573 Moreley; that the department did not receive any complaints about Appellant at 573 Moreley; and that based on his investigation and observations he believed Appellant lived at 91 Gale Street.
 {¶ 15} The State next called Detective Donnie Williams ("Det. Williams") of the APD, S.N.U.D. Det. Williams testified that several complaints were made concerning Appellant, 91 Gale Street, and the sale of drugs at that apartment. Det. Williams testified that in order to execute the search warrant, the door of 91 Gale Street had to be forced open by the APD. He also testified that the apartment was decorated and that he observed clothing and jewelry on the dresser.
 {¶ 16} Det. Williams testified that he was involved in a 1995 case with Appellant and that Appellant was convicted of aggravated drug trafficking, a felony of the first degree. Det. Williams continued his testimony explaining that after Appellant was arrested, Det. Williams, at the request of Appellant, called Eric Garrett ("Garrett"), Appellant's brother, to inform him the vehicle would be towed. He testified that Garrett came to 91 Gale Street, but the vehicle had already been towed and Garrett left.
 {¶ 17} Det. Williams testified that he never saw Appellant acquire, carry, or use the handgun. He also testified that he spoke with a downstairs neighbor at 91 Gale Street and the neighbor stated that Appellant lived at that address. Det. Williams testified that the handgun was found in the living room on the floor underneath a beanbag chair. When asked why he thought the handgun belonged to Appellant, Det. Williams responded "[i]t's inside his apartment. It's a onebedroom apartment. Where he lives." Det. Williams also testified that in October, 2003, Appellant made a burglary report for 91 Gale Street and he was listed as the victim.
 {¶ 18} David Shoenfelt ("Shoenfelt"), the owner/landlord of 91 Gale Street, testified next for the state. He testified that in August, 2003 he rented the 91 Gale Street apartment to Victoria Clark, but he soon learned she was not living in the apartment. Shoenfelt visited the apartment and discovered that Appellant was living in the apartment. As a result, Shoenfelt had Appellant complete a rental application. Shoenfelt testified that the information on the application first contained information regarding Garrett but when he realized Appellant was living there, he wrote over Garrett's information with Appellant's information. Mr. Shoenfelt testified that he completed a lease agreement and gave it to Appellant. He stated that Appellant never returned the lease, but that Appellant did pay his rent in a timely fashion. Mr. Shoenfelt testified that, at the request of Appellant, he would visit the apartment to collect the rent.
 {¶ 19} Detective Harvey ("Det. Harvey") of the APD Narcotic's Unit, testified that on December 10, 2003 he conducted surveillance at 91 Gale Street. He testified that no one else came to the apartment during his surveillance. Det. Harvey testified that he recovered an Ohio Edison bill for 91 Gale Street addressed to Appellant and a lease agreement for 91 Gale Street in the apartment. He testified that he had also observed Appellant at the apartment in November 2003. Det. Harvey testified that he did not see Appellant carry or use the handgun, but that he believed the gun belonged to Appellant because it was in his house with his wallet, his identification card, his clothes, and personal paperwork.
 {¶ 20} Testifying for the State, Detective Haverstick ("Det. Haverstick") of the APD Narcotic's Unit, stated that on December 10, 2003 he and his partner, Detective Male, conducted a traffic stop and arrested Appellant for driving under suspension, probation violations, and drug possession. He testified that he assisted with the execution of the search warrant and that the handgun was discovered when he moved a beanbag chair on the living room floor. He testified that a white cloth, possibly a hand towel, was on top of the handgun. Det. Haverstick stated that he had not seen Appellant carry the handgun.
 {¶ 21} Det. Haverstick testified that Garrett appeared at the apartment. He testified that Appellant was contacted and Appellant gave his permission to release the apartment to Garrett's control.
 {¶ 22} Detective Carney of the APD, S.N.U.D., testified to his participation in the execution of the search warrant on Appellant's residence. He testified that while he and his canine partner checked for drugs, he observed male clothes in the bedroom closet.
 {¶ 23} Detective Forney ("Det. Forney") of the APD, S.N.U.D., testified that after Appellant was arrested and while he had 91 Gale Street under surveillance he observed Garrett approach the apartment. Det. Forney testified that the apartment had a combination lock on the door instead of a key lock, he informed Garrett the APD was waiting for a search warrant, and as a result Garret could not enter the apartment. Det. Forney testified that he asked Garrett for the combination for the door and Garrett told him he did not know the combination. Det. Forney told Garrett "We're going to go in the house. We're going to have to force the door, so if you know it, we're going in there. So we don't have to do damage to the property, let me have the combination." Det. Forney testified that Garrett maintained he did not know the combination.
 {¶ 24} Det. Forney testified that once inside the apartment he discovered the handgun under the beanbag chair. He also testified that he did not see Appellant acquire, have, use, or carry the handgun.
 {¶ 25} After the testimony of the State's witnesses, the following State's exhibits were admitted into evidence: the handgun; the marijuana; the lease agreement; the Ohio Edison bill; pictures of the front door, the beanbag, and the closet shelf; the Bureau Criminal Identification and Investigation lab report; the drug lab report; the journal entry of Appellant's prior conviction; and Appellant's Bureau of Motor Vehicle records.
 {¶ 26} At the close of the State's case, Appellant made a Crim.R. 29 motion, arguing that no evidence was presented that Appellant acquired, had, used or carried the handgun. The trial court denied the motion stating:
"[H]ad means possess, and possess is in his apartment, if it's his apartment, and that is sufficient circumstantial evidence to go to the jury. That's what this case is all about. It's not carry. It's not use. It may be acquired, but had means possess, and that's what the case is all about * * *."
 {¶ 27} After the denial of Appellant's Crim.R. 29 motion, the trial court called a recess. When the trial resumed, Appellant rested his case without calling any witnesses and "reaffirm[ed]" his Crim.R. 29 argument. The trial court overruled the motion and the case went to the jury. On March 3, 2001, the jury returned a verdict of guilty.
 {¶ 28} Based on the foregoing and construing the evidence most strongly in favor of the State, this Court concludes that sufficient evidence was presented at trial from which the jury could have found that Appellant knowingly, constructively possessed the handgun confiscated from his 91 Gale Street apartment. Appellant's sole assignment of error is without merit.
 III {¶ 29} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, J., Batchelder, J., concur.
[1] Appellant's having weapons while under disability charge was based upon a prior conviction for aggravated drug trafficking.
[2] Appellant has not appealed his convictions of driving under suspension and possession of marijuana. Accordingly, this Court will only address his conviction of having weapons while under disability.