JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Upon reconsideration, the original announcement of decision ofState of Ohio v. Akil Edmonds, Cuyahoga App. No. 90931, released on December 18, 2008, is hereby vacated.
 {¶ 2} Defendant-appellant, Akil Edmonds ("appellant"), appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I {¶ 3} According to the case, on August 29, 2007, the grand jury returned a four-count indictment against appellant. The four-count indictment charged him as follows: count one, receiving stolen property-motor vehicle with a one-year firearm specification, in violation of R.C. 2913.51, a felony of the fourth degree; count two, carrying a concealed weapon, in violation of R.C. 2923.12, a felony of the fourth degree; count three, having weapons while under disability, in violation of R.C. 2923.13, a felony of the third degree; and count four, possession of criminal tools, in violation of R.C. 2923.24, a felony of the fifth degree.
 {¶ 4} Appellant waived trial before a jury on November 15, 2007, and the case proceeded to a trial before the lower court. Appellant and the state entered stipulations to the appellant's prior conviction in count three; the operability of the firearm; the authenticity and admissibility of the title to the vehicle; and the negative test results as a controlled substance for the pills found on the appellant at the time *Page 4 
of arrest. The lower court granted appellant's motion for acquittal under Crim. R. 29 for count four only. On November 16, 2007, appellant was found guilty of counts two and three and not guilty of count one. On December 17, the lower court sentenced appellant to a term of imprisonment of six months on count two and one year on count three, running consecutive to each other, for an aggregate sentence of eighteen months.
 {¶ 5} Patrolman Lawrence Smith of the Cleveland Police Department testified that he stopped appellant on August 18, 2007 after observing appellant weaving in and out of traffic with a broken rear window covered in plastic. Appellant was removed from the vehicle and found to be wearing an empty holster on his right side attached to his belt loop. Appellant was also wearing a bulletproof vest.
 {¶ 6} Officer Smith testified that he observed Officer Mazur remove a firearm from the vehicle, and he identified it in court as a "chief's special" Smith and Wesson. Officer Mazur further testified that the gun was loaded with a round in the chamber when he recovered it. Officer Mazur, pursuant to departmental procedure, cleared the firearm to render it safe. Officer Mazur also stated that he located suspected Ecstasy pills behind an ashtray behind the center console. After the gun was located by Officer Mazur in the car, appellant said to just take him to jail.[1] Appellant now appeals.
 II *Page 5 {¶ 7} Appellant's first assignment of error provides the following: "The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of carrying a concealed weapon and having a weapon while under disability."
 {¶ 8} Appellant's second assignment of error provides the following: "Appellant's convictions for carrying a concealed weapon and having a weapon while under disability were against the manifest weight of the evidence."
 III {¶ 9} Due to the substantial interrelation between appellant's first and second assignments of error, we shall address them together. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 10} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may, nevertheless, conclude that *Page 6 
the judgment is against the weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jurors that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, their verdict shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 11} As to a claim that a judgment is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983),20 Ohio App.3d 172, 20 Ohio B. 215, 485 N.E.2d 717. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. *Page 7 
 {¶ 12} R.C. 2923.12, carrying concealed weapons, states the following: "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: (1) A deadly weapon other than a handgun; (2) A handgun other than a dangerousordnance; (3) A dangerous ordnance."[2] (Emphasis added.) In order for a weapon to be concealed it must be "so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed." State v. Davis (1984), 15 Ohio App.3d 64, 64-65.
 {¶ 13} R.C. 2923.13(A), having weapons while under disability, provides in relevant part that: "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * "(3) The person isunder indictment for or has been convicted of any offense involvingthe illegal possession, use, sale, administration, distribution, ortrafficking in any drug of abuse * * *." (Emphasis added.)
 {¶ 14} In order to "have" a firearm, one must either actually or constructively possess it. Actual possession requires ownership and/or physical control. State v. Hardy (1978), 60 Ohio App.2d 325. In the case at bar, the gun was found in the car and not on appellant's person. Therefore, the state must prove that appellant *Page 8 
constructively possessed the gun or that he had the gun on his person in the holster immediately before his arrest.
 {¶ 15} Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. State v. Hankerson (1982),70 Ohio St.2d 87. The state may prove dominion and control solely thorough circumstantial evidence. State v. Mack, Summit App. No. 22580,2005-Ohio-5808. Ohio courts have previously held that circumstantial evidence may be used to infer that a defendant charged with carrying a concealed weapon constructively possessed a concealed weapon even though the weapon was not found on the defendant. See State v. Israel (July 22, 1992), Summit App. No. 15487. (Defendant wore an ankle holster and a gun fitting the holster was found 20 to 25 yards from defendant's car.)
 {¶ 16} Significant evidence establishing appellant's guilt was presented at the trial court level. Amber Raglin testified that the Infiniti vehicle was in appellant's exclusive possession from June 24, 2007 until the date of his arrest on August 18, 2007.[3] Amber Raglin also testified that she had previously consented to allowing appellant to use her vehicle for approximately eight months.[4] Appellant testified that he had a purported title to the vehicle, and he also testified that he cleaned Amber Raglin's personal belongings out of the vehicle before he was arrested on August *Page 9 
18, 2007. Appellant further testified that he purchased a bulletproof vest at the Berea Fairgrounds.
 {¶ 17} At the time appellant was arrested he did not immediately pull his vehicle over and continued slowly for 200 to 300 feet after the officers activated lights and siren. Officers Smith and Mazur testified that appellant was making movements on the right side of his body as they approached the vehicle. Officer Smith testified that these movements were consistent with an attempt to hide or conceal an object.[5]
 {¶ 18} A loaded "Smith Wesson" .9 mm firearm was found in the vehicle by Officer Mazur. The firearm was located immediately to the right of appellant, tucked inside a piece of carpeting that had been pulled away from the console. In addition, appellant was wearing a holster on his right side when he was arrested. Appellant's holster was attached to his belt and he was wearing a bulletproof vest at the time of his arrest. Moreover, Officer Smith testified that the recovered firearm fit into the holster appellant was wearing at the time of his arrest.
 {¶ 19} Appellant had sole possession and use of the vehicle for almost two months and testified that the title of the vehicle was in his name.[6] He testified that he had previously cleaned out Amber Raglin's belongings from the car, put them in a *Page 10 
garbage bag, and dropped them off with a female friend of Raglin's. Appellant was wearing a bulletproof vest and holster at the time of his arrest. In addition, the recovered firearm fit into the holster appellant was wearing. Appellant was alone in the vehicle at the time of his arrest, and both officers testified that they observed appellant making movements consistent with hiding or concealing an unknown object down by his leg.
 {¶ 20} We find the evidence legally sufficient to sustain the trial court's convictions for carrying a concealed weapon and having a weapon while under disability. In addition, when the evidence is viewed in a light most favorable to the state, we find that all essential elements of appellant's convictions were proven beyond a reasonable doubt. Moreover, nothing in the record demonstrates that the trial court lost its way in convicting appellant.
 {¶ 21} Accordingly, appellant's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 11 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] Tr. 80-81.
[2] Edmonds was convicted of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), which provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: * * * (2) A handgun other than a dangerous ordnance."
[3] Tr. 50-54.
[4] Tr. 49.
[5] Tr. 70.
[6] Although appellant testified that the title to the vehicle was in his name, the evidence does not support this claim. *Page 1